IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FIRST GUARANTY BANK,<br><br>      Plaintiff,<br>v.<br><br>REPUBLIC BANK, INC. nka RB PARTNERS, INC.,<br><br>      Defendant. | **MEMORADUM DECISION AND ORDER DENYING WITHOUT PREJUDICE FIRST GUARANTY'S MOTION FOR A PREJUDGMENT WRIT OF ATTACHMENT**<br><br>**FILED UNDER SEAL**<br><br>Case No. 1:16-cv-00150-JNP-BCW<br><br>District Judge Jill N. Parrish |

Before the court is First Guaranty Bank's Motion for a Prejudgment Writ of Attachment. [Docket 29]. The court DENIES the motion without prejudice.

## BACKGROUND

Med One Capital Funding LLC leased medical equipment to a number of hospitals and medical practices.[1] Med One then assigned the right to receive the lease payments to Republic Bank, Inc. The assignment agreement between Med One and Republic obligated Med One to continue to perform a number of "duties and obligations" in servicing the leases, including maintaining records regarding the lease payments and undertaking normal collection actions to collect past due accounts. The assignment agreement also stated that the "rights and obligations of the parties hereunder may not be assigned without the prior written consent of the other party."

---

[1] Both First Guaranty and Republic refer to the contracts between Med One and the hospitals and medical practices for medical equipment as "leases." Therefore, the court also refers to these contracts as leases but makes no determination regarding the nature of these contracts.

Republic later assigned fifty-three separate equipment leases, including the Med One leases it held, to First Guaranty by way of two "Portfolio Purchase Agreements" (Purchase Agreements). A December 24, 2014 Purchase Agreement transferred forty-five separate lease agreements to First Guaranty. A subsequent May 26, 2015 Purchase Agreement transferred eight additional lease agreements to First Guaranty.

The Purchase Agreements required First Guaranty to administer the leases in its own name. The agreements appointed First Guaranty as Republic's attorney-in-fact for the purpose of collecting the amounts owed under the leases. Republic agreed to allow First Guaranty to use its letterhead to send notices to the lessees informing them that the leases had been sold to First Guaranty and that all future payments should be sent to First Guaranty. Republic also made a number of warranties in the Purchase Agreements. It warranted that it had "the power and authority to enter into, execute, deliver and perform" the agreements. Republic further warranted that its obligations under the Purchase Agreements did not "require any consent or approval" under any other agreements to which it was bound.

The majority of the lessees made all of the payments required by the lease agreements. The lessees under three of the leases, however, stopped making the required payments. In March 2016, Pioneer Health Services, Inc. stopped making payments under its lease contract. On March 30, 2016, Pioneer filed for bankruptcy. A bankruptcy judge determined that the lease agreement was not a "true lease" of personal property within the meaning of 11 U.S.C. § 365(d)(5). The judge, therefore, denied a motion brought by Med One and First Guaranty to compel Pioneer to continue to make payments under the lease agreement during the pendency of the bankruptcy proceedings.

Sherman-Grayson Hospital, which was acquired by Alecto Healthcare Services Sherman, LLC dba WNJ Regional Medical Center (WNJ), also stopped making payments under two separate lease agreements it had entered into. First Guaranty alleges in its proposed amended complaint that it contacted WNJ and negotiated partial payments on the two Sherman-Grayson leases. But first Guaranty did not provide any evidence as to why WNJ stopped making payments for a time or explain the basis for negotiating partial payments on the leases.

First Guaranty sued Republic for the lease payments it has not yet received under the Pioneer and Sherman-Grayson leases and for attorney fees. It asserts three causes of action: (1) declaratory relief under 28 U.S.C. § 2201, (2) breach of contract, and (3) breach of the covenant of good faith and fair dealing. During discovery, First Guaranty learned that Republic is no longer operating as a bank and that it is in the process of liquidating its assets in order to distribute the funds to its shareholders. First Guaranty brought this motion for a prejudgment writ of attachment against $1,500,000 of Republic's assets, asserting that it has sustained about $1,000,000 in damages and estimating that it will accrue at least $500,000 in recoverable attorney fees before obtaining a judgment. First Guaranty argues that the writ is necessary because there is a probability that it will lose its remedy because Republic will distribute all of its assets before it can obtain a judgment.

**ANALYSIS**

Rule 64 of the Federal Rules of Civil Procedure authorizes the court to apply Utah law regarding writs of attachment. The court therefore looks to Rules 64A and 64C of the Utah Rules of Civil Procedure for the appropriate standard for entering such a writ. Rule 64A provides the general requirements for entering a prejudgment writ, while Rule 64C provides the specific requirements for entering a writ of attachment. The requirements for both Rule 64A and 64C

must be satisfied before this court may enter a prejudgment writ of attachment. The combined requirements of these two rules include:

1. "that the property [to be attached] is not earnings and not exempt from execution";

2. "that the writ is not sought to hinder, delay or defraud a creditor of the defendant";

3. "a substantial likelihood that the plaintiff will prevail on the merits of the underlying claim";

4. "that the defendant is indebted to the plaintiff";

5. "that the action is upon a contract or is against a defendant who is not a resident of this state or is against a foreign corporation not qualified to do business in this state or the writ is authorized by statute"; and

6. "that payment of the claim has not been secured by a lien upon property in this state."

UTAH R. CIV. P. 64A(c) & 64C(b). In addition, a movant must satisfy at least one of the seven requirements listed in Rule 64A(c)(4) through (c)(10). One of these requirements is "probable cause of losing the remedy unless the court issues the writ." *Id.* 64A(c)(10).

The parties dispute three of these requirements: (1) substantial likelihood that First Guaranty will prevail on the merits, (2) probable cause that First Guaranty will lose its remedy, and (3) that Republic is indebted to First Guaranty.[2]

---

[2] In the briefs, the parties also dispute whether First Guaranty's declaratory relief claim under 28 U.S.C. § 2201, in which it seeks a declaration that the Purchase Agreements should be partially rescinded because Republic failed to disclose material information, is a claim "upon a contract." But this issue is not relevant to First Guaranty's motion because it does not argue that there is a substantial likelihood that it will prevail on the merits of this claim.

I.  **SUBSTANTIAL LIKELIHOOD OF PREVAILING ON THE MERITS**

   A. *Transfer of the Lease Servicing Obligation*

Because Republic is a resident of Utah, a writ of attachment is only available for a cause of action "upon a contract." UTAH R. CIV. P. 64C(b)(2)(i). At least two of First Guaranty's claims are upon a contract: breach of contract and breach of the covenant of good faith and fair dealing.

First Guaranty's principal contention under these two causes of action is that Republic breached the warranties made in the Purchase Agreements by failing to transfer the right to service the lease payments to First Guaranty. First Guaranty argues that Republic did not have the power to perform its duty under the purchase agreement to transfer the authority to service the leases to First Guaranty because the original assignment agreement gave Med One the authority to retain its servicing obligations. First Guaranty further argues that Republic breached its warranty that it could perform its duty to transfer the authority to service the leases without obtaining the "consent or approval" of a third party for the same reason.

The crux of First Guaranty's claims is that the original assignment agreement between Med One and Republic prevented Republic from transferring Med One's lease servicing obligations to First Guaranty without Med One's prior written consent. A non-assignment clause typically prevents a party burdened by contractual obligations from delegating those obligations to another party and bars a party that has a right to receive promised services from unilaterally assigning the benefit of those promised services to another. First Guaranty's theory of recovery in this case rests upon another interpretation of the non-assignment clause in this case. It argues that the clause also prohibits Republic from relieving Med One of its servicing obligations and then assigning those obligations to a third party without Med One's prior written consent.

In order to prevail on this breach of contract theory, First Guaranty must prove that Republic's breach proximately caused it damage by preventing First Guaranty from collecting

the payments owed under the three delinquent lease contracts. *See Christensen & Jensen, P.C. v. Barrett & Daines*, 194 P.3d 931, 938 (Utah 2008) ("[I]n a breach of contract action, the non-breaching party is required to show that the breach proximately caused the damages sought."). The court concludes that First Guaranty has not yet produced evidence showing that any breach of the warranties contained in the Purchase Agreements proximately caused the loss of the lease payments. Two links in the causal chain are missing.

First, First Guaranty has not produced evidence that Med One has asserted a right under the non-assignment clause to prevent other parties from performing the lease servicing obligations. The Purchase Agreements do not purport to give First Guaranty the authority to assert Med One's rights under the non-assignment clause. Rather, all servicing obligations were transferred directly to First Guaranty. If Med One did not exercise a right to prevent First Guaranty from performing the lease servicing obligations, First Guaranty cannot be harmed by any breach of Republic's warranties in the Purchase Agreements.

The email chain between a Med One representative and a Republic representative that First Guaranty attached to its motion as Exhibit 8 suggests that, as of September 16, 2016, Med One had no intention of asserting an exclusive right to service the leases. In an email, the Med One representative complained that First Guaranty had suggested to him that Med One had a continuing obligation to service the leases for First Guaranty at its direction. The Med One representative stated unequivocally that Med One had no such an obligation.[3] He sought

---

[3] The Med One representative argued in the email that the non-assignment clause precluded Republic from assigning the right to receive Med One's services to First Guaranty. But the contractual right asserted by the Med One representative is very different from the right to exclude others from performing the lease servicing obligations on which First Guaranty bases its breach of contract claim. The Med One representative did not assert a right under the non-assignment clause to continue servicing the leases to the exclusion of First Guaranty. Indeed,

6

confirmation that Med One had transferred the servicing of the lease payments to Republic and asked if there was anything more he needed to do before he closed his files on the leases.[4]

Thus, the evidence presented to the court indicates that as of September 16, 2016, Med One had no desire to enforce any alleged right to continue servicing the leases. Moreover, First Guaranty has not yet produced evidence that prior to this date First Guaranty attempted to service the delinquent leases but was thwarted or deterred from doing so by Med One's assertion of a right to enjoin First Guaranty's efforts through the non-assignment clause. Absent evidence that Med One used the non-assignment clause to exclude First Guaranty from servicing the leases, there is no evidence that First Guaranty has been harmed by any breach of the warranties in the Purchase Agreements.

Second, even if Med One insisted on continuing to perform its lease servicing obligations, First Guaranty has not provided evidence to suggest that the identity of the party servicing the leases made a difference in whether the lessee made the required lease payments. In order to prove causation, First Guaranty would also need to show that Med One's collection efforts were defective, and that First Guaranty would have successfully collected all of the missed payments if it had received the right to service the leases in its own name. But the assertions in the proposed amended complaint suggest that the missed payments on the Pioneer lease had nothing to do with the party servicing the lease payments. Pioneer only stopped making payments around the time that it declared bankruptcy, suggesting that the payments would have stopped regardless of who serviced the lease. Moreover, First Guaranty has not produced

---

First Guaranty has not yet produced an explanation as to why Med One would want to continue servicing the leases given that it had assigned the benefit of the lease payments to Republic.

[4] In a subsequent deposition, the Med One representative confirmed that the September 16, 2016 email transferred the servicing rights for the three delinquent leases to Republic.

evidence that WNJ would have made all of the payments under the Sherman-Grayson leases if First Guaranty had received the right to service them.[5]

Because First Guaranty has not yet produced evidence showing that any breach of the warranties regarding the transfer of the lease servicing obligations proximately caused any damages, it has not established a substantial likelihood of prevailing on this theory of recovery.

### B. *First Guaranty's Other Theories of Recovery*

In its reply brief, First Guaranty argued that it would prevail on five additional breach of contract theories of recovery. The court concludes that First Guaranty has not shown a substantial likelihood of success on any of these additional theories of recovery.

First Guaranty first argues that Republic breached its contractual obligation to deliver all of the lease documents and "supplemental documents" within five days after the closing date of the Purchase Agreements. First Guaranty asserts that the lease assignment agreement between Med One and Republic constitutes a "supplemental document" and that Republic failed to forward the document within five days after the closing date. But First Guaranty does not explain how Republic's alleged failure to provide supplemental documents after the Purchase Agreements were signed caused Pioneer or WNJ to withhold payments or prevented First Guaranty from conducting successful collection efforts. Therefore, First Guaranty has not shown that this alleged breach proximately caused the damages it now claims.

Next, First Guaranty argues that Republic breached its obligation to "direct to [First Guaranty] all communications from the Lessee or any other party which are relevant to the Equipment or the Lease" because it did not inform First Guaranty in a timely manner that

---

[5] The proposed amended complaint casts doubt on First Guaranty's assertion that it did not have the power to enforce WNJ's payment obligations under the leases. The proposed complaint alleges that First Guaranty engaged in direct negotiations with WNJ and secured partial payments.

Pioneer had declared bankruptcy. First Guaranty argues that this breach prevented it from filing a timely claim in Pioneer's bankruptcy proceeding. Again, First Guaranty has not proven any damages from this alleged breach. It provides no explanation of the claims or legal arguments that it could have made if Republic had informed First Guaranty of the bankruptcy in a more timely manner, argue how a timely claim would have improved its position in the bankruptcy proceeding, or produce evidence as to how much additional money it would have recovered if it had been able to make timely arguments in the bankruptcy court. Indeed, the bankruptcy court order attached as Exhibit 14 to First Guaranty's reply brief indicates that First Guaranty was able to bring a motion to compel Pioneer to continue to make the lease payments, which the bankruptcy court denied on the merits.

First Guaranty also alleges that Republic breached the May 26, 2015 Purchase Agreement because the bankruptcy court concluded that the lease document signed by Pioneer was not a "true lease" of personal property within the meaning of 11 U.S.C. § 365(d)(5), which hindered some of First Guaranty's claims in the bankruptcy proceeding. First Guaranty, however, did not identify any provision of the Purchase Agreement that was breached. It does not point to any language of the contract that could be interpreted as a guaranty that a bankruptcy court would find that the lease agreement was a "true lease." Absent any argument as to how the Purchase Agreement has been breached, this court cannot conclude that First Guaranty will likely prevail on this theory of recovery.

Additionally, First Guaranty contends that Republic breached its obligation to deliver "all rights and claims arising under or related" to the Pioneer lease when Republic filed a UCC Financing Statement Amendment with the State of Mississippi. First Guaranty argued that the UCC filing terminated its security interest in software that was the subject of the Pioneer lease.

But as the court has noted in its order denying in part First Guaranty's motion to amend, the UCC filing did not affect First Guaranty's security interest in the software. The UCC filing lists Republic as the only secured party that was terminating its security interest. It did not purport to eliminate First Guaranty's security interest. Moreover, even if the UCC filing ostensibly operated to terminate First Guaranty's security interest, Mississippi law prohibits a filing made by one secured party from affecting the security interest of another secured party. MISS. CODE § 75-9-510(b) ("A record authorized by one (1) secured party of record does not affect the financing statement with respect to another secured party of record."). By operation of law, therefore, the UCC filing made by Republic could not affect First Guaranty's security interest.

Finally, First Guaranty argues that Republic breached its obligations to provide supplemental lease documents and to forward correspondence and communications by failing to inform First Guaranty that one of the lessees, Sherman-Grayson, had been acquired by WNJ about two months before the December 24, 2014 Purchase Agreement was signed. Assuming that these contractual provisions required Republic to inform First Guaranty of the acquisition after the Purchase Agreements went into effect, First Guaranty provides no explanation or evidence as to how its knowledge of the acquisition would have affected WNJ's decision not to make payments or First Guaranty's collection efforts. Thus, it has failed to show a causal connection between the alleged breach and the damages it claims.

*C. Conclusion*

It may be possible for First Guaranty to provide additional evidence to prove its contract claims. However, at this stage in the proceedings, it has failed to prove a substantial likelihood that it will prevail on its claims "upon a contract."

## II.     PROBABLE CAUSE OF LOSING THE REMEDY

In order to obtain a prejudgment writ of attachment, First Guaranty must also show probable cause of losing its remedy unless the court issues the writ. It argues that it will not be able to collect upon a judgment if it prevails because Republic has ceased doing business as a bank and is in the process of liquidating its assets for distribution to its shareholders.

In July, 2012, Republic sent letters to shareholders notifying them that the board of directors had decided to commence an orderly liquidation of the bank. In August, 2012, Republic adopted a "Plan of Orderly Liquidation." The plan projected that the liquidation process would take "up to three years to complete." Between the end of 2012 and the end of 2015, Republic's board of directors authorized a number of large cash dividends to shareholders. In October, 2016, Republic's board reported that the majority of the bank's investments "were liquidated." The board further stated its intent to "sell the balance of the remaining loan and lease portfolio." The October, 2016 report further stated: "Strategies are formulated relating to the disposition of assets by year-end 2016. . . . The shareholders will acquire any remaining assets at the end of the year." In a November, 2016 letter to shareholders, the president of Republic and the chairman of the board informed shareholders that Republic would cease doing business as a bank and surrender its charter on December 31, 2016. The letter informed shareholders that "[b]ased upon projections we may begin paying dividends in 2018." On July 1, 2017, Republic changed its name to RB Partners, Inc.

Although it would be easy for Republic to come forward with further information regarding its liquidation plan and the estimated date on which it will distribute the last of its assets to the shareholders, it has declined to do so. Instead, it correctly asserts that First Guaranty bears the burden of proving probable cause of losing its remedy if Republic distributes all of its assets before First Guaranty is able to obtain a judgment. Republic argues that it currently has

sufficient assets to pay a judgment and asserts that First Guaranty has not proven that it will not have adequate assets in the future if First Guaranty obtains a judgment in its favor.

It is a close question as to whether First Guaranty has shown probable cause of losing its remedy. Republic's liquidation plans, combined with its resistance to providing any information regarding these plans, raise legitimate concerns. But First Guaranty has not yet produced evidence regarding Republic's current liquidation plan. Although First Guaranty's attorney deposed Republic's president and CEO in September, 2017, counsel never asked about Republic's present liquidation timeline. Absent more specific information regarding this timeline, the court cannot say that First Guaranty has adequately shown probable cause of losing its remedy should it prevail in this lawsuit. If First Guaranty obtains additional evidence regarding Republic's liquidation, it may file a renewed motion.

### III. REPUBLIC'S INDEBTEDNESS TO FIRST GUARANTY

The requirement that the defendant be "indebted to" the plaintiff before a court may issue a prejudgment writ of attachment is not well defined under Utah law. *See* UTAH R. CIV. P. 64C(b)(1). The court, therefore, must look to the language and context of Rules 64A and 64C to determine what the indebtedness requirement entails.

The court agrees with First Guaranty that the indebtedness requirement cannot mean that the plaintiff must have a judgment in hand before it can qualify for a writ of attachment. Such an interpretation would render meaningless the prejudgment remedy provided in Rule 64A. The court also agrees with Republic that the indebtedness prong must require something more than the fact that the plaintiff has asserted a legal claim to recover damages, or even that the plaintiff has shown a substantial likelihood of prevailing on the merits of the claim. As one Utah District Court judge has persuasively reasoned, "if 'indebted to' in rule 64C means nothing more than the plaintiff has a claim for relief, it would add nothing to the requirement in rule 64A(c)(3) that the

claimant show 'a substantial likelihood that the plaintiff will prevail on the merits of the underlying claim.'" *Lodges at Bear Hollow Condo. Homeowners Ass'n, Inc. v. Bear Hollow Restoration, LLC*, 344 P.3d 145, 155 (Utah Ct. App. 2015).[6] In short, interpreting the indebtedness requirement to encompass the assertion of a legal claims for which there is a substantial likelihood of success would render the "indebted to" language meaningless. *See State v. Rushton*, 395 P.3d 92, 95–96 (Utah 2017) (Utah courts avoid "any interpretation which renders parts or words in a statute inoperative or superfluous in order to give effect to every word in the statute." (citation omitted)).

First Guaranty concedes that the indebtedness requirement must require something more than the assertion of a legal claim for recovery for which there is a substantial likelihood of success. Looking to Texas law, which has long included a similar "justly indebted" requirement to issue a writ of attachment, First Guaranty argues that the phase "indebted to" in Rule 64C should be read to mean "an obligation to pay a *liquidated* sum on an express or implied contract" or an obligation to pay an unliquidated sum "if the underlying contract provides a rule for ascertaining such damages." *In re Argyll Equities, LLC*, 227 S.W.3d 268, 271–72 (Tex. App. 2007). Under Texas law, however, "[a]ttachment is not appropriate if the amount of the claim is so uncertain that a jury must determine the final amount of damages." *Id.* at 271. The court agrees that the Texas rule gives independent meaning to the indebtedness requirement without abrogating the prejudgment writ of attachment altogether by requiring a judgment before issuing such a writ. *See Bear Hollow*, 344 P.3d at 155 (noting that the district court had reasoned that

---

[6] In *Bear Hollow*, the Utah Court of Appeals noted the reasoning of the district court judge, but did not state whether it agreed or disagreed with the lower court because the appellant provided no "reasoned analysis" that the district court had had erred. 344 P.3d at 155–56.

"the 'indebted to' requirement implied a liquidated amount due."). The court, therefore, applies the Texas rule articulated above in this case.

First Guaranty argues that it meets the indebtedness requirement because its "damages can be calculated to a reasonable certainty based on provisions of the Portfolio Purchase Agreements." It then cites a provision of the Portfolio Agreement that provides:

> With respect to any losses, liabilities, damages, costs or expenses incurred by [First Guaranty] which reflect an inaccuracy in the Exhibits or enforceability of the Leases, the liability exposure of [Republic] applicable in this case will be the purchase price of the effected [sic] Leases less any moneys received by [First Guaranty] plus costs and expenses incurred by [First Guaranty] (including reasonable attorney fees) . . . .[7]

This provision could be interpreted as a contractual "rule for ascertaining . . . damages."[8] *See Argyll Equities*, 227 S.W.3d at 271–72.

But this damages formula is limited to a specific class of breaches to the Purchase Agreements—breaches based upon an inaccuracy in the exhibits attached to the Purchase Agreements or breaches based upon the enforceability of the leases. First Guaranty has not based its motion for a prejudgment writ of attachment upon either one of these potential breaches of the Purchase Agreements. Although it has argued that Republic breached the Purchase Agreements by failing to transfer the servicing rights to the leases and by failing to deliver leases that a bankruptcy court would deem to be a "true lease," neither of these alleged breaches affects the fundamental enforceability of the lease documents.

---

[7] This clause of Purchase Agreements also provides that Republic has "the right, but not the obligation" to use this same formula to indemnify First Guaranty for other types of breaches of Republic's warranties and obligations under the agreement. But this provision does not operate as a contractual "rule for ascertaining . . . damages" because Republic may or may not chose to calculate damages by way of this formula. *See Argyll Equities*, 227 S.W.3d at 271–72.

[8] The portion of this formula that provides for "reasonable attorney fees," however, would not satisfy the contractual formula for ascertaining damages rule because the court would necessarily need to determine what a "reasonable" attorney fee would be. The attorney fee provision, therefore, is not akin to liquidated damages.

Because First Guaranty has not argued that Republic failed to deliver enforceable leases, the contractual formula for calculating damages does not apply to its claims. First Guaranty has not shown that it is entitled to a liquidated amount of damages or that the Purchase Agreements provide a method for determining the total sum owed for a breach. Thus, First Guaranty has not satisfied the "indebted to" requirement for obtaining a prejudgment writ of attachment.

## CONCLUSION AND ORDER

The court DENIES without prejudice First Guaranty's motion for a prejudgment writ of attachment. If First Guaranty believes that it can cure the defects in its motion noted by the court, it may file a subsequent motion for prejudgment writ of attachment.

DATED November 17, 2017.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge