# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FIRST GUARANTY BANK,<br><br>        Plaintiff,<br><br>v.<br><br>REPUBLIC BANK, INC. nka RB PARTNERS, INC.,<br><br>        Defendant. | **MEMORADUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**<br><br><br>Case No. 1:16-cv-00150-JNP-CMR<br><br>District Judge Jill N. Parrish |

Republic Bank[1] sold a number of equipment leases to First Guaranty Bank by way of two lease purchase contracts. Most of the lessees paid the leases in full, but two of the lessees stopped making payments. First Guaranty sued Republic for breach of contract, breach of the covenant of good faith and fair dealing, and for rescission[2] of the two lease purchase contracts due to either material misrepresentations or mutual mistake. Before the court are (1) Republic's motion for summary judgment on all claims [Docket 147], (2) First Guaranty's motion for summary judgment on its claim for rescission due to mutual mistake [Docket 135], and (3) First Guaranty's motion for summary judgment on its claim for rescission due to material misrepresentations [Docket 155].

The court GRANTS IN PART and DENIES IN PART Republic's motion for summary judgment and DENIES First Guaranty's motions for summary judgment.

---

[1] After this litigation started, Republic became RB Partners, Inc.

[2] First Guaranty labeled this cause of action as a request for declaratory judgment under 28 U.S.C. § 2201. But it is clear that First Guaranty is requesting the court to exercise its equitable powers to rescind the lease purchase contracts rather than issue only a declaratory judgment.

# BACKGROUND

A. *Med One finances McKesson's sale of equipment, software, and services to Pioneer via the Pioneer Sales Agreement. Med One then transfers its rights under the Pioneer Sales Agreement to Republic.*

In December 2011, Pioneer Health Services, Inc, an entity that owned and operated several hospitals, entered into a contract with McKesson Technologies Inc. The contract, entitled the McKesson Master Agreement (McKesson Agreement), detailed many of the terms under which Pioneer would obtain equipment, software, and implementation and maintenance services from McKesson. The equipment and software to be provided by McKesson was called the Paragon Hospital Information System. The McKesson Agreement provided that Pioneer would receive a nontransferable, perpetual license to use the software provided by McKesson.

Med One Capital Funding, LLC financed Pioneer's purchase of equipment, software, and services from McKesson. On April 12, 2012, Med One entered into a Conditional Sales Agreement (Pioneer Sales Agreement) with Pioneer. This contract listed Pioneer as the customer and McKesson as the vendor for four separate items:

(1) Paragon Hospital Information System – as described in Contract # 1-18XKQT ($1,772,334.00),
(2) Paragon Hospital Information System – as described in Contract # 1-18X8C9_PS4A ($132,000.00),
(3) Software – as described in Contract # 1-18X8C9_PS6 ($363,303.99), and
(4) Paragon Interface Implementation Service - as described in Contract # 1-18X8C9_PS6 ($146,029.56).

The Pioneer Sales Agreement defined these four items as "Equipment" and required Pioneer to pay for the Equipment by remitting 60 monthly payments to Med One. The first 12 payments were $25,000 each. The next 48 payments were $54,594 each. The contract stated that Med One "shall retain title to the Equipment for legal and security purposes" until Pioneer has remitted all 60

monthly payments in full. After all payments had been made, Med One agreed to transfer title to Pioneer.

At some point after the execution of the Pioneer Sales Agreement, McKesson, Pioneer, and Med One all signed an undated letter addressed to "Whom it may concern" (Letter Agreement). This Letter Agreement referenced the Pioneer Sales Agreement and stated that

> rights and obligations associated with the Software, Equipment, and Services are transferred to [Med One] and [Med One] is undertaking to fund the obligations of [Pioneer] under the [McKesson Agreement]. [Pioneer] acknowledges and agrees that in the event of default under the loan, . . . [Med One] may notify McKesson of [Pioneer's] default and McKesson may terminate all equipment maintenance services and software maintenance services provided by McKesson.

Med One subsequently sold its right to receive the monthly payments under the Pioneer Sales Agreement to Republic. This transfer was governed by a contract between Med One and Republic entitled the Master Assignment of Leases and Progress Funding Agreement (Med One Assignment Agreement). In this contract, the parties referred to the Pioneer Sales Agreement as a lease. The Med One Assignment Agreement transferred from Med One to Republic the right to receive the monthly payments provided for in the Pioneer Sales Agreement. But Med One retained the right to service the monthly payments due from Pioneer. Republic could terminate Med One in its role of servicer only if Med One violated the Med One Assignment Agreement, became bankrupt, or committed fraud in connection with its servicing duties. The Med One Assignment Agreement also provided that the "rights and obligations of the parties hereunder may not be assigned without the prior written consent of the other party."

On April 25, 2012, Med One filed a UCC Financing Statement with the State of Mississippi. The UCC Financing Statement listed both Republic and Med One as secured parties for "Equipment more fully described in the attached Schedule A." The attached Schedule A consisted of a one-page purchase order, which listed Pioneer as the "Customer," McKesson as the

"Supplier," and Med One as the "Owner." The four items of "Equipment" listed in the attached purchase order were the same items listed in the Pioneer Sales Agreement: (1) Paragon Hospital Information System – as described in Contract # 1-18XKQT, (2) Paragon Hospital Information System – as described in Contract # 1-18X8C9_PS4A, (3) Software – as described in Contract # 1-18X8C9_PS6, and (4) Paragon Interface Implementation Service - as described in Contract # 1-18X8C9_PS6.

In January 2013, Pioneer signed a Notice of Delivery and Acceptance, acknowledging receipt of the items listed in the Pioneer Sales Agreement. This document stated that "[t]itle to the Equipment shall at all times remain with [Med One]."

   B. *Republic sells a number of leases to First Guaranty, including the Sherman-Grayson lease and the Pioneer "lease."*

In late 2014 and mid 2015 Republic assigned fifty-three separate leases[3] to First Guaranty by way of two Portfolio Purchase Agreements (Purchase Agreements). The December 24, 2014 Purchase Agreement (First Purchase Agreement) transferred forty-five lease agreements to First Guaranty. One of these leases was for equipment provided to Sherman-Grayson Hospital (Sherman-Grayson lease). About two months before Republic and First Guaranty executed the First Purchase Agreement, Alecto Healthcare Services Sherman, LLC dba WNJ Regional Medical Center (WNJ) released a press release announcing that it had completed the acquisition of Sherman-Grayson Hospital. The May 26, 2015 Purchase Agreement (Second Purchase Agreement) transferred eight additional lease agreements to First Guaranty, including the right to monthly payments described in the Pioneer Sales Agreement.

---

[3] Although the Purchase Agreements refer to the financial obligations transferred therein as "leases," the court makes no determination as to whether these obligations are true leases. Because the documents at issue in this case refer to these obligations as leases, the court uses this term as well.

The Purchase Agreements required First Guaranty to administer the leases in its own name. The agreements appointed First Guaranty as Republic's attorney-in-fact for the purpose of collecting the amounts owed under the leases. Republic agreed to allow First Guaranty to use its letterhead to send notices to the lessees informing them that the leases had been sold to First Guaranty and that all future payments should be sent to First Guaranty. Despite these provisions, First Guaranty orally agreed that Med One could continue to administer the payments due under the Pioneer Sales Agreement on a temporary basis.

Before the parties executed the Purchase Agreements, Republic made documents available to First Guaranty in a digital "data room." The data room included the Pioneer Sales Agreement and the associated UCC filing and Notice of Delivery and Acceptance. The data room did not include the McKesson Agreement or the Letter Agreement. Indeed, Republic did not have copies of the McKesson Agreement or the Letter Agreement and was not aware of the existence of these documents. The data room also did not include the Med One Assignment Agreement signed by Republic. Employees of First Guaranty inspected the documents in the data room before it entered into the Second Purchase Agreement.

### C. The lessees stop making payments on the Sherman-Grayson and Pioneer leases. First Guaranty sues Republic.

The majority of the lessees made all of the payments required under the lease agreements acquired by First Guaranty. But two of the lessees stopped making payments. At some point after the First Purchase Agreement was executed, WNJ stopped paying on the Sherman-Grayson lease. First Guaranty eventually accepted a partial, lump-sum payment from WNJ in exchange for the equipment that was the subject of that lease.

Additionally, on March 30, 2016, Pioneer declared bankruptcy and stopped making payments due under the Pioneer Sales Agreement. The bankruptcy court set a deadline of July 28,

2016 for creditors to file a proof of claim. But Republic did not forward notices to First Guaranty and it was unaware of the bankruptcy proceedings. An employee of First Guaranty, concerned that the Pioneer payments had stopped, arranged to meet with his counterpart at Republic. At the July 27, 2016 meeting, Republic informed First Guaranty of the Pioneer bankruptcy and of the fact that the proof of claim deadline was the next day. First Guaranty missed the claim deadline. But it convinced Med One, which had filed a timely proof of claim, to file an amended claim that incorporated First Guaranty's claims in the bankruptcy case. Through this procedural mechanism, First Guaranty was eventually able to assert its claims and arguments to the bankruptcy court.

Med One and First Guaranty brought a motion to compel the bankruptcy trustee to continue to make payments under the Pioneer Sales Agreement during the pendency of the bankruptcy proceedings. They argued that 11 U.S.C. § 365(d)(5), which requires a trustee to make payments on "an unexpired lease of personal property . . . , until such lease is assumed or rejected," required the trustee to make the payments. The bankruptcy court disagreed, finding that the Pioneer Sales Agreement was a loan and not a true lease. That court declined to address at that time whether the Pioneer Sales Agreement constituted a secured or unsecured financing transaction.

First Guaranty sued Republic, asserting three causes of action. First, it alleged that Republic breached several provisions of the Second Purchase Agreement. Second, First Guaranty asserted that it was entitled to rescission of both the First and Second Purchase Agreements based upon material misrepresentations and mutual mistake. Third, it claimed that Republic breached the covenant of good faith and fair dealing attendant to the First and Second Purchase Agreements. Republic now moves for summary judgment on all of the claims asserted by First Guaranty. First Guaranty also moves for summary judgment in its favor on the rescission cause of action. First

Guaranty argues that it should prevail as a matter of law on its claims that the First and Second Purchase Agreements should be rescinded due to material misrepresentations and mutual mistake.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment on a claim is required if the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## ANALYSIS

## I.  REPUBLIC'S MOTION FOR SUMMARY JUDGMENT

### A.  *Breach of Contract*

Republic moves for summary judgment on First Guaranty's breach of contract cause of action. First Guaranty concedes its breach of contract claims based upon the First Purchase Agreement and the Sherman-Grayson lease. It argues instead that Republic breached four provisions of the Second Purchase Agreement in relation to the Pioneer lease: (1) Section 3.f, (2) Section 3.d, (3) Section 3.b, and (4) Section 2.c.

#### 1)  Section 3.f

Section 3.f of the Second Purchase Agreement warranted that "[Republic] has full right, title and interest in and to the Purchased Assets . . . and is assigning this right, title and interest in the Purchased Assets to [First Guaranty]." First Guaranty interprets this provision to be a guaranty

that Republic had title to the equipment that was the subject of the lease agreements. It argues that Republic breached this provision because Republic did not own all of the equipment that was the subject of the Pioneer Sales Agreement. First Guaranty points to the McKesson Agreement, which states that McKesson only granted a license to Pioneer to use the software that was provided pursuant to that agreement. Thus, First Guaranty asserts that McKesson retained title to the software and therefore Med One never obtained an ownership interest in the software and never transferred an ownership interest to Republic.

But First Guaranty misreads Section 3.f. The term "Purchased Assets" is defined in Section 1.a of the Second Purchase Agreement to include: (1) Republic's interest in the leases, (2) all agreements and documents related to the leases or the equipment, (3) an electronic copy of the lessor's file for each lease, and (4) "[t]o the extent, but only to the extent, that [Republic], and not the lease originator or other person, has any right, title and interest in and to the same, the equipment described in the Leases." In other words, the Second Purchase Agreement provided that the Purchased Assets transferred under the contract included any ownership interest in the equipment that Republic may have possessed. But the definition of Purchased Assets explicitly omitted any promise that Republic held ownership rights to the equipment and stated that any equipment that was owed by a third party was excluded from the term "Purchased Assets."

In short, Republic's warranty that it held "full right, title and interest in and to the Purchased Assets" does not include a guaranty that it held title to the equipment that was the subject of the leases. Thus, regardless of whether Republic held full title to all of the equipment that was the subject of the Pioneer Sales Agreement, it did not breach Section 3.f. Accordingly, the court grants summary judgment on First Guaranty's breach of Section 3.f claim.

2)  Section 3.d

Section 3.d provides: "The Transaction Documents constitute, or when executed and delivered by [Republic] shall constitute, the valid and binding obligations of [Republic] enforceable against it in accordance with their respective terms." The term "Transaction Documents" is defined in Section 3.a to include the Second "Purchase Agreement and all other agreements, documents, certificates and financing statements to be executed and delivered by [Republic] in connection with the transactions referred to herein." Thus, Republic warranted that the Second Purchase Agreement and related documents signed by Republic were enforceable against it.

First Guaranty argues that "Transaction Documents" include the Pioneer Sales Agreement between Med One and Pioneer. First Guaranty further contends that "the ownership and security interests reflected in the Pioneer Agreement and [an accompanying UCC filing] are valid and binding obligations against Republic." The court disagrees. Transaction Documents includes only those documents executed by Republic in connection with the Second Purchase Agreement. This term does not include the Pioneer Sales Agreement that was executed by Med One and Pioneer. In other words, Republic somewhat redundantly promised to be bound only by the lease transfer documents it signed; it did not promise to be bound by lease agreements executed by others. Consequently, Republic did not breach Section 3.d, and the court grants summary judgment on First Guaranty's contract claim based on this section.

3)  Section 3.b

Under Section 3.b of the Second Purchase Agreement, Republic warranted that "[n]either the execution and delivery by [Republic] of the Transaction Documents executed or to be executed and delivered by [Republic], nor the performance by [Republic] of its obligations thereunder will . . . violate, conflict with, constitute a breach of, or result in any default under or require any consent

or approval under . . . any indenture or agreement to which [Republic] is a party or by which [Republic] or its property is bound." First Guaranty argues that Republic breached this warranty because the Second Purchase Agreement violated provisions of the Med One Assignment Agreement. The Med One Assignment Agreement stipulated that Med One would continue to service the lease payments after transferring the leases to Republic. Republic could only terminate Med One's authority to service the leases if Med One breached the Assignment Agreement, became bankrupt, or committed fraud. The Med One Assignment Agreement further provided that the "rights and obligations of the parties hereunder may not be assigned without the prior written consent of the other party." First Guaranty asserts that Republic breached the Med One Assignment Agreement by entering into the Second Purchase Agreement because Republic either effectively terminated Med One's lease servicing rights without cause or Republic transferred the lease servicing rights without first obtaining Med One's prior written consent.

Republic first argues that it did not breach the Med One Assignment Agreement because a Med One attorney sent an email stating that Med One did not have the right to reject Republic's subsequent assignment of the leases. But the opinion of an attorney in an email is not valid evidence of what the Med One Assignment Agreement requires. *See Mind & Motion Utah Investments, LLC v. Celtic Bank Corp.*, 367 P.3d 994, 1004–05 (Utah 2016) (holding that courts may not consider affidavits regarding a party's subjective understanding of the terms of a contract). Republic has not attempted to interpret the language of the Med One Assignment Agreement to determine its rights and obligations under that contract. In the absence of such an analysis, the court cannot accept an opinion expressed in an email as the definitive interpretation of the contract.

Next, Republic argues that First Guaranty orally agreed to allow Med One to service the lease payments. Republic further contends that this oral agreement modified the terms of the

Second Purchase Agreement, relieving it of its obligation not to violate the terms of the Med One Assignment Agreement. First Guaranty concedes that it agreed to allow Med One to service the leases. But First Guaranty asserts that the agreement was only temporary and that it retracted this temporary agreement in early 2016 when it requested to service the leases in its own name.

The existence and scope of any oral agreement between Republic and First Guaranty regarding the right to service the leases involves questions of fact. *See Nunley v. Westates Casing Servs., Inc.*, 989 P.2d 1077, 1083 (Utah 1999). Resolving all factual disputes in favor of First Guaranty, the court must assume that First Guaranty agreed to allow Med One to service the leases on a temporary basis and that this temporary agreement was revoked in early 2016. Thus, there is a period of time after First Guaranty revoked its temporary agreement during which it may have been damaged by Republic's breach of its warranty in Section 3.b that the Second Purchase Agreement would not violate any previous contracts to which Republic was a party.[4]

In sum, the court rejects the arguments raised by Republic and denies summary judgment on First Guaranty's claim for breach of Section 3.b.

   4)   Section 2.c

Section 2.c of the Second Purchase Agreement requires Republic to "forward to [First Guaranty] copies of all correspondence relating to the Lease or the Equipment which [Republic] receives from the Lessee or any other party." Pioneer filed for bankruptcy on March 30, 2016 but Republic failed to forward notifications regarding the bankruptcy filing until July 27, 2016, one day before the deadline to file a proof of claim in those proceedings. First Guaranty argues that by failing to forward correspondence regarding the bankruptcy in a timely manner, Republic breached

---

[4] First Guaranty has not yet explained how it was damaged by Republic's alleged breach of Section 3.b. But Republic did not raise the issue of damages on this claim and First Guaranty therefore was not required to address it.

its obligations under Section 2.c. First Guaranty admits that this untimely disclosure of the bankruptcy notices did not affect its rights in the bankruptcy proceedings because it eventually was able to assert its claims and arguments to the bankruptcy court. First Guaranty argues, however, that the late disclosure caused it to incur additional legal fees in order to find a way to pursue its claim in the bankruptcy court despite missing the deadline.

Republic argues that this claim should be rejected because First Guaranty has not proven any damages attributable to the late notice. It contends that First Guaranty would have incurred legal fees to "determine if and how to file a proof of claim regardless of when it received notice of [Pioneer's] bankruptcy." The court disagrees. If First Guaranty had received timely notice, it could have followed the standard procedure for filing a proof of claim in the bankruptcy proceedings. Republic has not pointed to evidence showing the absence of a dispute of fact as whether First Guaranty incurred additional attorney fees in order to pursue its claim despite missing the deadline. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that the moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact). Because Republic has not carried its initial burden, the court denies summary judgment on First Guaranty's Section 2.c breach of contract claim.

5)  Conclusion

The court grants summary judgment in favor of Republic on First Guaranty's claims that Republic breached Sections 3.f and 3.d of the Second Purchase Agreement. The court denies Republic's motion for summary judgment on First Guaranty's claims that Republic breached Sections 3.b and 2.c.

B.  *Rescission*

First Guaranty asserts a claim for rescission of the First and Second Purchase Agreements under two theories: material misrepresentation and mutual mistake.

1) Material Misrepresentation

In Utah, a contract can be rescinded for a material misrepresentation when (1) "there is a misrepresentation" by one party, (2) the misrepresentation was "fraudulent or material," (3) "the misrepresentation induced the recipient to make the contract," and (4) the "recipient was justified" to rely on the misrepresentation. *Miller v. Celebration Mining Co.*, 29 P.3d 1231, 1235 (Utah 2001) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 164(1) (1981)). First Guaranty asserts a claim for rescission of the Purchase Agreements based upon three separate misrepresentations. Republic argues that First Guaranty's material misrepresentation claim should fail as a matter of law for two reasons: (1) First Guaranty cannot satisfy all of the elements of material misrepresentation and (2) the economic loss rule bars the application of the material misrepresentation doctrine in this case. The court addresses in turn each of the three misrepresentations alleged by First Guaranty.

a) Title to the McKesson Software

First Guaranty first asserts that the Second Purchase Agreement should be rescinded due to material misrepresentation because Republic did not inform First Guaranty that it did not own the software that was the subject of the Pioneer Sales Agreement. McKesson sold equipment, software, and services to Pioneer. Med One financed this transaction. The Pioneer Sales Agreement, the UCC filing, and the Notice of Delivery and Acceptance all recited that Med One held title to the equipment, software, and services[5] provided by McKesson until Pioneer remitted all of the monthly payments it owed to Med One. Thus, First Guaranty argues that it presumed that Republic obtained from Med One an ownership interest in the equipment and software and that

---

[5] As noted in the Background section, the Pioneer Sales Agreement defined the equipment, software, and services provided by McKesson to Pioneer as "Equipment." The contract purported to grant to Med One ownership of the "Equipment." The court need not address whether Med One could ever obtain title to the services provided by McKesson.

title would then pass to First Guaranty when it purchased the Pioneer Sales Agreement from Republic. But the McKesson Agreement, which was not in the data room and thus not made available to First Guaranty, stated that McKesson only gave Pioneer a nontransferable license to use its software. First Guaranty contends, therefore, that it could not have discovered that McKesson retained its ownership interest in the software and that Republic could not transfer title to the software to First Guaranty. First Guaranty alleges that it would not have entered into the Second Purchase Agreement if it had known this because its rights in a potential bankruptcy proceeding would be impaired.

Republic is entitled to summary judgment on this material misrepresentation theory because First Guaranty cannot satisfy the first element of material misrepresentation claim: a misrepresentation made by Republic. First Guaranty argues that "Republic made a material misrepresentation when it failed to disclose either the [McKesson Agreement] or the [Letter Agreement] before the May 2015 [Purchase Agreement] was entered."[6] The Restatement (Second) of Contracts, which the Utah Supreme Court relied upon when it adopted the material

---

[6] In its response to Republic's motion for summary judgment, First Guaranty argues that Republic made a misrepresentation by failing to disclose the McKesson Agreement. In First Guaranty's cross-motion for summary judgment in its favor on the misrepresentation issue, though, it states in passing that the documents found in the data room affirmatively misrepresented Med One's ownership rights to the software. But Republic did not make any of the representations made in these documents. Republic was not a party to the Pioneer Sales Agreement or the Notice of Delivery and Acceptance. And the UCC filing was made by Med One, not Republic. Nor did Republic endorse any of the representations made in these documents. Thus, any misrepresentations found in these documents were made by a third party rather than Republic.

A contract may be rescinded due to a material misrepresentation made by a third party, but only if the party to the contract opposing rescission had reason to know of the misrepresentation or had not given value or relied materially on the transaction. RESTATEMENT (SECOND) OF CONTRACTS § 164(2) (1981). As discussed below, Republic had no reason to know that that the assertions of ownership found in the Pioneer Sales Agreement and other documents were misrepresentations. Republic also gave value by transferring the leases to First Guaranty. Thus, First Guaranty may not void the Second Purchase Agreement based upon any misstatements contained in documents created by Med One.

misrepresentation doctrine, states that non-disclosure of a fact can amount to a misrepresentation only under specific circumstances:

> A person's non-disclosure of *a fact known to him* is equivalent to an assertion that the fact does not exist in the following cases only:
>
> (a) where he knows that disclosure of the fact is necessary to prevent some previous assertion from being a misrepresentation or from being fraudulent or material.
>
> (b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.
>
> (c) where he knows that disclosure of the fact would correct a mistake of the other party as to the contents or effect of a writing, evidencing or embodying an agreement in whole or in part.
>
> (d) where the other person is entitled to know the fact because of a relation of trust and confidence between them.

RESTATEMENT (SECOND) OF CONTRACTS § 161 (1981) (emphasis added). In this case, it is unnecessary to determine whether any of the four scenarios described in this section can be applied to Republic. In all of these situations, non-disclosure of a fact can be equivalent to a misrepresentation only if the fact is known to the party charged with concealing it. But it is undisputed that Republic did not have the McKesson Agreement or the Letter Agreement, nor did Republic even know of the existence of these documents. Absent any knowledge of these documents, Republic's failure to disclose information contained in them cannot be a misrepresentation.

Because the undisputed facts show that there was no misrepresentation on the part of Republic regarding the ownership of the software provided to Pioneer by McKesson, First Guaranty cannot prevail on this theory of material misrepresentation.

b) Med One's Servicing Rights

Next, First Guaranty asserts that Republic made a material misrepresentation by failing to disclose the fact that Med One retained payment servicing rights when it transferred the Pioneer Sales Agreement to Republic. Med One's servicing rights are described in the Med One Assignment Agreement between Med One and Republic. But Republic did not provide this contract to First Guaranty before those parties entered into the Second Purchase Agreement. First Guaranty argues that this omission amounted to a material misrepresentation because the Second Purchase Agreement provided that First Guaranty would administer the Pioneer lease payments in its own name.

Republic argues that it is entitled to summary judgment on this material misrepresentation claim because Med One's servicing rights, as described in the Med One Assignment Agreement, were not material. Republic notes that a few of the documents placed in the data room referenced the Med One Assignment Agreement and asserts that the fact that First Guaranty never asked for a copy of the Med One Assignment Agreement indicates that this contract and its contents were simply not important to it. According to Republic, First Guaranty only cared about the creditworthiness of the lessees and their ability to pay the lease amounts, not the servicing rights of third parties found in the Med One Assignment Agreement.

The court concludes, however, that Republic has not established the absence of any dispute of material fact regarding the materiality of Med One's servicing rights. "A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." RESTATEMENT (SECOND) OF CONTRACTS § 162(2) (1981). This fact-intensive standard is not readily amenable to resolution on summary judgment. Although First Guaranty's failure to inquire about the Med One Assignment Agreement may indicate that it was not concerned about servicing rights, a fact-finder could also

infer that First Guaranty had no reason to believe that the Med One Assignment Agreement that was referenced in a few of the thousands of pages contained in the data room would contradict the terms of the Second Purchase Agreement. Moreover, First Guaranty argues that the terms of the Second Purchase Agreement that convey servicing rights to it indicate that the servicing rights were material. In light of this conflicting evidence, Republic has not shown that it is entitled to summary judgment on the materiality issue.

Republic also argues that this material misrepresentation claim is barred by the economic loss rule. "The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." *Reighard v. Yates*, 285 P.3d 1168, 1176 (Utah 2012) (citation omitted). "Thus, 'when a conflict arises between parties to a contract regarding the subject matter of that contract, "the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon." ' " *Id.* (citation omitted).

The Utah Supreme Court has recently held that a fraud in the inducement claim can be barred by the economic loss rule where the fraud claim "arises out of the very grounds alleged as a basis for a breach of contract action." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 194 (Utah 2018). In that case, the counterclaim plaintiff (plaintiff) alleged that the counterclaim defendant (defendant) had breached a warranty in a contract that it owned a formula to a health product. *Id.* at 195. The plaintiff also asserted a claim for fraud in the inducement, asserting that fraudulent statements that the defendant owned the formula had induced it to enter into the contract. *Id.* The Utah Supreme Court held that the economic loss rule could bar a

fraudulent inducement claim based upon pre-contract statements "where a party's tort claims are entirely duplicative of its contract claims." *Id*. at 198.

Republic argues that the holding of *HealthBanc* applies here. It asserts that First Guaranty's material misrepresentation claim, which is based upon Republic's alleged failure to disclose information before the parties entered into the Second Purchase Agreement, is equivalent to a fraudulent inducement claim. Republic contends, therefore, that the material misrepresentation claim should be barred by the economic loss rule because this claim is duplicative of First Guaranty's breach of contract claim.

The court concludes that the economic loss rule does not apply here because material misrepresentation is not a tort claim. Material misrepresentation is not based upon tort concepts of fault or breach of a duty of care. A party need not knowingly or negligently make a misrepresentation in order for this doctrine to apply. Even if a party inadvertently makes a material misrepresentation, the contract may be rescinded. *Miller*, 29 P.3d at 1235 & n.3; RESTATEMENT (SECOND) OF CONTRACTS § 164, cmt. b & illus. 2. Moreover, a material misrepresentation claim does not permit tort damages. The remedy for fraudulent inducement is the same as any other fraud claim: damages caused by reliance upon the fraudulent statement. *See Giusti v. Sterling Wentworth Corp.*, 201 P.3d 966, 977 & n.38 (Utah 2009); *Tretheway v. Miracle Mortg., Inc.*, 995 P.2d 599, 601 (Utah 2000). But a material misrepresentation permits a court to grant only the contract remedy of voiding the contract.

In sum, the economic loss rule exists to prevent parties to a contract from asserting "actions in tort in an attempt to circumvent the bargain they agreed upon." *Reighard*, 285 P.3d at 1176. Because material misrepresentation is a contract principle and not a tort action, the economic loss rule does not apply here. Therefore, the court denies summary judgment as to First Guaranty's

claim that Republic's failure to disclose Med One's servicing rights constituted a material misrepresentation.

### c) WNJ's Acquisition of Sherman-Grayson Hospital

Finally, First Guaranty asserts that Republic made a material misrepresentation by not disclosing the fact that WNJ had acquired Sherman-Grayson Hospital about two months before the parties executed the First Purchase Agreement. First Guaranty argues that this material misrepresentation constitutes grounds to rescind this contract.

But, as noted above, an omission can be deemed a misrepresentation only if the undisclosed information is known to the party charged with concealing it. RESTATEMENT (SECOND) OF CONTRACTS § 161. First Guaranty's Rule 30(b)(6) representative testified in his deposition that his understanding was that the WNJ acquisition of Sherman-Grayson "was known to Republic Bank shortly after [First Guaranty] purchased the leases" by way of the First Purchase Agreement. First Guaranty has not produced any other evidence to contradict its own representative's testimony that Republic became aware of the acquisition after the First Purchase Agreement had been signed. Absent any evidence that Republic knew of the acquisition before it signed the First Purchase Agreement and withheld that information, First Guaranty cannot prevail on its claim for material misrepresentation regarding the Sherman-Grayson acquisition.

### d) Conclusion

The court, therefore, grants summary judgment in favor of Republic on First Guaranty's McKesson software and WNJ acquisition theories of material misrepresentation. The court denies Republic's motion for summary judgment on First Guaranty's servicing rights theory of material misrepresentation.

2) Mutual Mistake

First Guaranty also argues that the Second Purchase Agreement should be rescinded under the doctrine of mutual mistake. It contends that both itself and Republic were operating under the mistaken assumption that Republic owned the software that was the subject of the Pioneer Sales Agreement. First Guaranty asserts that because this mistaken assumption was essential to the parties' decision to enter into the Second Purchase Agreement, this contract should be rescinded. The court concludes, however, that First Guaranty's mutual mistake claim fails as a matter of law because the Second Purchase Agreement allocated to First Guaranty the risk that Republic did not own the software.

Mutual mistake occurs when, "at the time the contract is made, the parties make a mutual mistake about a material fact, the existence of which is a basic assumption of the contract." *Workers Comp. Fund v. Utah Bus. Ins. Co.*, 296 P.3d 734, 741 (Utah 2013) (citation omitted). The Utah Supreme Court has cited the Restatement (Second) of Contracts in applying the mutual mistake doctrine. *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 152(1) (1981) ("Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party . . . ."). The Restatement articulates three essential elements to a mutual mistake claim: (1) "the mistake must relate to a 'basic assumption on which the contract was made,'" (2) the mistake must have "a material effect on the agreed exchange of performances," and (3) "the mistake must not be one as to which the party seeking relief bears the risk." RESTATEMENT (SECOND) OF CONTRACTS § 152 cmt. a.

The Restatement further provides that "[a] party bears the risk of a mistake when . . . the risk is allocated to him by agreement of the parties." *Id.* § 154. A prime example of a contract that allocates risk of mistake is a quitclaim deed that provides that a seller of real property "will convey

only such title as he has." *Id.* § 154 cmt. b, illus. 1. In this example, the buyer assumes the risk that that parties are mistaken as to the seller's title to the property. *Id.*

Here, the Second Purchase Agreement allocated to First Guaranty the risk that Republic did not own any of the leased property. Under section 1.a of this contract, Republic agreed to transfer to First Guaranty (1) Republic's interest in the leases, (2) all agreements and documents related to the leases or the equipment, (3) an electronic copy of the lessor's file for each lease, and (4) "[t]o the extent, but only to the extent, that [Republic], and not the lease originator or other person, has any right, title and interest in and to the same, the equipment described in the Leases." Similar to a quitclaim deed, Republic agreed to transfer only the ownership rights it had to the leased property. Thus, the Second Purchase Agreement allocated to First Guaranty the risk that title to some of the property was held by the lease originator or some other entity and could not be transferred to First Guaranty. Because First guaranty bore this risk, it cannot prevail on its mutual mistake claim. The court, therefore, grants summary judgment in favor of Republic on this claim.

## C. Breach of the Covenant of Good Faith and Fair Dealing

First Guaranty alleges that Republic breached the implied covenant of good faith and fair dealing by failing to disclose information and by breaching the terms of the Purchase Agreements. Specifically, First Guaranty asserts that Republic failed to disclose (1) the terms of the Med One Assignment Agreement, (2) that Med One had not given its consent to assign the leases, (3) the terms of the McKesson Agreement, or (4) WNJ's acquisition of Sherman-Grayson Hospital. First Guaranty also repeats some of its breach of contract claims in its breach of the covenant of good faith and fair dealing claim by alleging that Republic failed to (1) obtain consent from Med One to assign the leases, (2) promptly notify First Guaranty of Pioneer's bankruptcy, or (3) deliver an enforceable security interest in connection with the Pioneer contract.

Republic moved for summary judgment on this claim, arguing that it did not breach the covenant of good faith and fair dealing by failing to disclose the McKesson Agreement or the Med One Assignment Agreement. First Guaranty never responded to Republic's arguments, nor has it clarified its breach of the covenant of good faith and fair dealing claim.

The court concludes that Fist Guaranty has failed to produce a viable theory for the breach of the covenant of good faith and fair dealing and grants summary judgment in favor of Republic on this claim. "Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract." *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 968 (Utah 2008) (citation omitted). The "core function" of the covenant of good faith and fair dealing is to prevent "another's opportunistic interference with the contract's fulfillment." *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 817 (Utah 2011). This core function "protects commercial reliance interests" by implying terms "that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute." *Id.* at 816–17. But the Utah Supreme Court has cautioned that the covenant of good faith and fair dealing should serve a limited role because judicial misuse of this legal principle "threatens 'commercial certainty and breed[s] costly litigation.'" *Id.* at 816 (alteration in original) (citation omitted).

First Guaranty proffers two theories for its breach of the covenant of good faith and fair dealing claim. First, it argues that Republic breached its duty of good faith by failing to disclose information before the parties entered into the Purchase Agreements. But the covenant of good faith and fair dealing does not arise until the parties enter into a contractual relationship. It may not govern the parties' pre-contract conduct. Second, First Guaranty contends that Republic breached the covenant of good faith and fair dealing by breaching the express terms of the Purchase

Agreements. This theory also fails because the covenant of good faith and fair dealing is not an alternative method for enforcing the written provisions of a contract.

In short, First Guaranty has not responded to Republic's argument for summary judgment on the covenant of good faith and fair dealing claim. Nor has it articulated a valid theory that Republic breached this covenant by intentionally interfering with First Guaranty's right to receive the benefits of the Purchase Agreements. For these reasons, the court grants summary judgment on First Guaranty's breach of the covenant of good faith and fair dealing claim.

## II.    FIRST GUARANTY'S MOTIONS FOR SUMMARY JUDGMENT

First Guaranty moves for summary judgment in its favor on its claim for rescission due to mutual mistake. It also moves for summary judgment in its favor on its claim for rescission due to material misrepresentations regarding Republic's ownership of the McKesson software. Because the court grants summary judgment in favor of Republic on both of these claims, First Guaranty's motions for summary judgment on these same claims is denied.

### CONCLUSION AND ORDER

The court rules as follows:

1. The court GRANTS IN PART and DENIES IN PART Republic's motion for summary judgment. [Docket 147]. The court grants summary judgement on First Guaranty's breach of contract claim to the extent that it asserts breaches of Sections 3.f and 3.d of the Second Purchase Agreement. The court denies summary judgment to the extent that First Guaranty asserts breaches of Sections 3.b and 2.c. The court grants summary judgment on First Guaranty's material misrepresentation claim to the extent that it is based upon its title to the McKesson software and WNJ acquisition theories. The court denies summary judgment on First Guaranty's material misrepresentation claim to the

extent that it is based upon its servicing rights theory. The court grants summary judgment as to First Guaranty's mutual mistake claim. Finally, the court grants summary judgment on First Guaranty's breach of the covenant of good faith and fair dealing claim.

2. The court DENIES First Guaranty's motion for summary judgment on its mutual mistake claim. [Docket 135].

3. The court DENIES First Guaranty's motion for summary judgment on its material misrepresentation claim. [Docket 155].

DATED September 27, 2019.

BY THE COURT

Jill N. Parrish
United States District Court Judge